UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA ELAINE BENSON,

              Plaintiff,

      v.                                        **DECISION AND ORDER**
                                                                  18-CV-320S

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

1.      Plaintiff Brenda Elaine Benson brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff protectively filed her applications with the Social Security Administration on April 24, 2014. (R.[1] at 13.) Plaintiff alleged disability since September 10, 2013, due to depression and anxiety, diabetes, and back problems. (R. at 30, 216.) Plaintiff's applications were denied (R. at 124-26, R. at 127-29), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). (R. at 134-35.)

3.      On September 20, 2016, ALJ Bryce Baird held a hearing at which Plaintiff, represented by her attorney Kelly Laga, appeared and testified. (R. at 34-84.) Vocational Expert Susan Rowe also appeared and testified via telephone. Id. At the time of the

---

[1] Citations to the underlying administrative record are designated as "R. at __."

hearing, Plaintiff was 52 years old, with a 10th grade-equivalent education and past work experience as a cleaner, cook, and pricing clerk. (R. at 169, 518, 217.)

4. The ALJ considered the case *de novo* and, on August 9, 2017, issued a written decision denying Plaintiff's applications for benefits. (R. at 13-28.) On January 11, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-4.) Plaintiff filed the current action challenging the Commissioner's final decision,[2] on March 9, 2018. (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 14, 15.) Plaintiff filed a response on March 18, 2019, at which time this Court took the motions under advisement without oral argument. (Docket No. 16.) For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] ALJ Baird's September 20, 2016 decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

> mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 10, 2013. (R. at 15.) At step two, the ALJ found that Plaintiff has the severe impairments of anxiety, depression, lumbago, obesity, diabetes,

osteoarthritis, and carpal tunnel syndrome. (R. at 15.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-18.)

12. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a reduced range of light work, and is able to lift and carry on occasion up to 20 pounds, and frequently up to 10 pounds. The ALJ stated that Plaintiff can

> sit for up to 6 hours in an 8-hour workday and can stand or walk for up to 6 hours in an 8-hour workday. She is limited to no climbing ladders, ropes or scaffolds and no crawling; but can frequently stoop, kneel, and crouch. She can frequently handle and finger with the right dominant hand. She can have no exposure to hazards such as unprotected heights or moving machinery. In addition, she is limited to simple routine tasks, that can be learned after a short demonstration or within 30 days. She can have no more than superficial interaction with the public and occasional interaction with co-workers.

(R. at 18.)

13. At step four, the ALJ found Plaintiff capable of performing her past relevant work as a cleaner. (R. at 26.) In the alternative, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 27.)

14. Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence because the ALJ discounted the only medical opinion concerning her physical limitations. She also claims that the ALJ improperly failed to consider her breast cancer as a serious impairment at Step 2 and failed to account for her breast cancer in his RFC determination. Both arguments fail.

5

15. First, Plaintiff faults the ALJ for rendering an RFC determination despite discounting the only medical opinion in the record by affording it only "limited weight." Plaintiff does not, however, acknowledge the abundance of available medical evidence in the record or the ALJ's thorough discussion of it. Most of these records contain findings indicating some degree of impairment to Plaintiff's right hand and back, but not a disabling impairment.

16. For example, consultative examiner Dr. Donna Miller examined Plaintiff on August 6, 2014. Plaintiff's gait appeared normal, but her squat was at 50% of normal. (R. at 488.) Dr. Miller found no abnormality in Plaintiff's thoracic spine. (R. at 489.) Dr. Miller's hand examination found strength 5/5 in the upper and lower extremities; no hand deficit was noted. (R. at 490.) Dr. Miller's diagnosis was chronic low back pain, type 2 diabetes, and hypertension. Id. Dr. Miller's opinion was that Plaintiff had a "mild limitation" for heavy lifting, bending, carrying, pushing and pulling. Id. In assessing this evidence, the ALJ gave it "limited weight" because he found Dr. Miller's findings of "mild limitations" to be "vague." (R. at 25.)

17. Nonetheless, the ALJ's RFC findings are fully supported by other medical evidence in the record. The final question of disability is reserved to the Commissioner. Snell v. Apfel, 177 F.3d 128, 133–34 (2d Cir. 1999). The law provides that an ALJ is permitted to assess RFC when the record contains enough evidence from which an RFC can be determined. See Tankisi v. Comm'r of Soc. Sec., 521 Fed. App'x 29, 34 (2d Cir. 2013) (summary order). In other words, a medical source statement or formal medical opinion is not necessarily required for an ALJ to make an RFC determination. See id.; cf.

Pellam v. Astrue, 508 Fed. App'x 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where the ALJ relied on physician's findings and treatment notes).

18.     Here, the record contains ample medical records in addition to Dr. Miller's 2014 opinion. Exam notes from Excelsior Orthopaedics on February 27, 2015, show a positive Tinel's sign at the right carpal tunnel, limited range of motion on the right thumb, and swelling at the CMC joint on her right hand. (R. at 691.) Plaintiff's right grip strength was 13 pounds and her left grip strength was 50 pounds. Her pinch strength was 8 pounds on her right hand and 12.3 pounds on her left hand. Id. Excelsior records from December 7, 2015, show a positive Tinel's sign, positive carpal compression test, and positive Phalen's test on the right hand, as well as tenderness and limited range of motion in the right hand. (R. at 693-94.) Plaintiff's grip strength improved to 35 pounds on the right, 52 pounds on the left. Id. Similar symptoms were noted at a January 20, 2016 Excelsior visit. At this visit, results of an EMG test were reported as normal. (R. at 705.) A cortisone injection was also given. Id. These records support the ALJ's RFC findings.

19.     Plaintiff's back issues are also documented in the record. The ALJ recognized that on August 19, 2014, Plaintiff's physician Dr. Winston Douglas found painful lumbar flexion and extension, tenderness of paravertebral muscles, and spinous process tenderness at L3, L4, and L5. (R at 844.) On May 12, 2015, Dr. Douglas found restricted thoracic spine range of motion, painful neck range of motion, tenderness at paravertebral muscles and spinous process on both sides. (R. at 826.) On June 16, 2015, Dr. Douglas noted a knot-like mass over Plaintiff's cervical spine area, tenderness at the paravertebral region, restricted range of motion in cervical and lumbar spines, and spinous process tenderness on both sides. (R. at 821-822.) Visits on July 16 and October

7

15, 2015, resulted in similar findings. (R. at 816, 803.) None of these conditions were found to preclude Plaintiff from working.

20. The ALJ's decision is also supported by the hearing testimony. At her September 20, 2016 hearing, Plaintiff testified to hand and back pain. She claimed that she had sharp pain from her right wrist to her right thumb that caused her hand to shake and made her drop things. (R. at 51-52, 55.) She stated that she frequently wore a brace on her right hand, though she was not wearing it at the hearing. (R. at 53-55.) Plaintiff testified that the most she could lift with both hands was 2-3 pounds, or a gallon of milk. Id. Plaintiff testified that she could only stand for 3-5 minutes before her back and foot bothered her too much. (R. at 54.) She stated she could walk, at most, a block or a block and a half before her back bothered her. Id. The ALJ credited this testimony to the extent that it was consistent with the diagnostic evidence. (R. at 25.)

21. At the hearing, the ALJ also asked Plaintiff about her past use of housecleaning as a coping mechanism. (R. at 59-60, 728.) Plaintiff acknowledged that some days she could still clean her house. (R. at 60.) The ALJ also questioned Plaintiff about her prior statements that walking and getting outside helped her mental state. (R. at 70.)

22. The ALJ described in great detail the medical records Plaintiff submitted. (See R. at 19-25.) In his final assessment, he noted that although Plaintiff alleged hand pain, the EMG performed at Excelsior was normal. (R. at 25.) He further noted that although Plaintiff alleged back pain, no x-rays or MRIs supported that complaint. Id. The ALJ also noted that Plaintiff cooks, cleans, and shops. Id. Ultimately the ALJ concluded that Plaintiff had the RFC to lift 20 pounds occasionally, 10 pounds regularly, and that she

was capable of frequent stooping, kneeling and crouching, and frequent handling and fingering with her right hand. (R. at 18.) He also stated Plaintiff could stand or walk for up to 6 hours in an 8-hour workday. Id. As discussed above, these findings are sufficiently supported by substantial evidence in the record.

23. Plaintiff's second argument is that the ALJ erred in not considering her breast cancer either at Step 2 or in his RFC assessment. Defendant argues that there was no evidence in the record that Plaintiff's breast cancer caused any ongoing functional restrictions. (Docket No. 15-1 at 10.) Indeed, review of the record reveals no error in the ALJ's treatment of this issue.

24. Plaintiff was diagnosed with Ductal Carcinoma in Situ ("DCIS")[3] on May 18, 2016, and underwent a lumpectomy on July 1, 2016. (R. at 675, 673.) On August 5, 2016, Plaintiff's calcifications were noted to be "benign." (R. at 720.) A followup mammogram on August 5, 2016, showed "no suspicious residual calcifications." (R. at 717.) Plaintiff was to begin a course radiation as a preventative measure. (R. at 721.) On August 9, 2016, Plaintiff told Alyssa Sullivan, a social worker at Horizon, that her cancer had been completely removed and that only a few radiation sessions were needed. (R. at 765.) The ALJ questioned Plaintiff about her cancer, and Plaintiff stated that her next step would be a check up with her doctor, and that hopefully the cancer would not come back. (R. at 64.)

25. The burden of proving disability lies with Plaintiff. 20 C.F.R. § 404.1512(a). To be considered disabled, a claimant's disability must have lasted, or must be expected

---

[3] "DCIS is considered the earliest form of breast cancer. DCIS is noninvasive, meaning it hasn't spread out of the milk duct and has a low risk of becoming invasive." https://www.mayoclinic.org/diseases-conditions/dcis/symptoms-causes/syc-20371889. Accessed 9/24/2019.

to last, for a continuous period of at least 12 months. 20 C.F.R. § 1509. Plaintiff presented no evidence that her DCIS had lasted 12 months, nor was there any evidence that it was expected to last 12 months.

26. To the extent that Plaintiff faults the ALJ for not contacting her cancer care providers, the record establishes that the ALJ requested additional medical records that Plaintiff was previously unable to obtain, and added them to the record on May 2, 2017. (R. at 40, 272.) The ALJ also offered Plaintiff the opportunity to submit additional evidence and to request a supplemental hearing. (R. at 272.) On July 12, 2017, Plaintiff, through her attorney, asked for the ALJ's help in obtaining more, non-cancer-related, medical records. (R. at 275.) If Plaintiff was experiencing ongoing symptoms of breast cancer that affected her ability to work, she could and should have alerted the ALJ to this fact, and submitted additional records or asked for his help in obtaining them. Plaintiff did not do so, and, in light of these circumstances, the ALJ had no independent obligation to request further records. This Court therefore detects no error.

27. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence. Plaintiff's motion for judgment on the pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated: October 1, 2019
          Buffalo, New York


          <u>s/William M. Skretny</u>
          WILLIAM M. SKRETNY
          United States District Judge